NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY'S LLC, | Civil Action No. 11-6362 (WJM) |
| Plaintiff, | |
| v. | |
| | OPINION |
| CHRISTOPHER BABCOCK, | |
| Defendant. | |

**Falk, U.S.M.J.**

This matter comes before the Court upon the motion of defendant, Christopher Babcock, to transfer venue to the Western District of Kentucky. (Docket Entry No. 31.) The motion is decided on the papers. Fed. R. Civ. P. 78(b). For the reasons set forth below, defendant's motion to transfer is **granted.**[1]

---

[1] Defendant also seeks consolidation of this action with a related matter currently pending in the Western District of Kentucky. In the alternative, defendant seeks dismissal of the complaint. (Docket Entry No. 31.) In light of the transfer decision, Defendant's motion to dismiss the complaint is denied as moot. Defendant's motion to consolidate is denied; any requests to consolidate the action is more appropriately made to the transferee Court.

## BACKGROUND

**A.      The Parties**

Plaintiff, Anthony's, LLC ("Anthony's" or "plaintiff"), is a New Jersey limited liability company with its principal place of business in Englewood Cliffs, New Jersey. (Compl. ¶ 1; Affidavit of Robert Geller ("Geller Aff.") ¶ 3.) Anthony's is in the business of buying and selling stamps and coins to collectors either directly or over the internet. (Compl. ¶ 4; Geller Aff. ¶ 4.) According to its website, Anthony's has been traveling throughout the country buying collections of coins and other collectibles since 1958. (Counterclaim ¶ 10.) Defendant, Christopher Babcock ("Babcock" or "defendant"), is a citizen of Kentucky; he is a licensed oral and maxillofacial surgeon. (Counterclaim ¶ 12.) Babcock is a coin collector and individual investor. (Compl.¶ 2; Defendant's Brief in Support of Motion ("Def.'s Br.") at 2.) Third-party defendant, Marc Guitman ("Guitman"), is a citizen of New Jersey and an employee of Anthony's. (Answer to Third-Party Complaint ("Answer") ¶ 13 and Geller Aff. ¶ 12.)

**B.      Factual Background**

Beginning in November 2008, Babcock began to purchase "lots" of coins from Anthony's.[2] Specifically, on November 2, 2008, Babcock purchased silver coins listed by Anthony's in an e-Bay auction by submitting the winning auction bid. (Geller Aff. ¶ 8.)

---

[2]Lots contain numismatic pieces; jewelry coin lots can contain scratched, damaged, and on occasion non-genuine pieces, as well as non-numismatic gold and silver coins. (Geller Aff. ¶ 6.) Lots can also consist of "cast" coins which contain the proper amount of precious metal but were not issued by the U.S. Government. ( Id. ¶ 7.)

On November 20, 2008, Babcock negotiated and purchased five lots of coins directly from Anthony's. (Id.)  From November 2009 through October 2010,  Babcock made other purchases of coins from Anthony's which it had advertised for auction on e-Bay.[3] (Affidavit of Christopher Babcock ("Babcock Aff.") Ex. B, ¶ 3.) Babcock's purchases totaled approximately $527,000. (Id. ¶ 2.) All of the merchandise Babcock purchased was shipped to him in Kentucky by Anthony's via the United States Postal Service. Anthony's sent a total of 11 separate shipments from New Jersey to Kentucky. (Counterclaim ¶ 21.) The total weight of the shipped coins is approximately five hundred pounds.  (Babcock Aff. ¶ 13.)

In November 2010, long after Anthony's stated period for return of merchandise had expired,[4] Babcock contacted Anthony's about lots he had purchased which he believed contained counterfeit and valueless coins.  (Babcock Aff. Ex. B  ¶ 5.) According to Babcock, he repeatedly received assurances from Anthony's, and in particular from its employee, Guitman, that the coins he had purchased were authentic. (Counterclaim ¶ 35, 37.)  On November 22, 2010, in response to Babcock's complaints, Anthony's offered to replace certain cast coins purchased by Babcock with real ones. (Geller Aff.¶ 13.) The

---

[3]Babcock made at least 9 separate purchases of coins and other items from Anthony's which it listed for sale on e-Bay from the period November 13, 2009 through October 14, 2010. (Geller Aff.¶ 8.)  Babcock purchased 39 lots in total. (Id.) According to Babcock, Anthony's directly solicited a number of sales either via telephone or by way of e-mail solicitation. (Babcock Aff. Ex. B and ¶ 3.)

[4]Anthony's has a one-week return policy supposedly due to the highly volatile nature of the market for coins and precious metals.  (Geller Aff. ¶ 10.)

parties agreed to simultaneously exchange the coins by express courier. Specifically, Babcock was to send certain designated coins to Anthony's and Anthony's, in return, was to send Babcock $25,000 worth of coins selected by him from Anthony's inventory.[5] (Plaintiff's Brief in Opposition ("Pl.'s Br,") ¶ 2; Compl. ¶ 13.) While an effort to simultaneously exchange the coins by express courier was attempted in February 2010, the swap was ultimately aborted.[6]

In March 2011, counsel for Babcock sent a letter to Anthony's outlining Babcock's alleged claims of material misrepresentations and omissions against Anthony's, and identifying the various causes of action contemplated by Babcock arising from the transactions. (Affidavit of Matthew Coogle, Esq. ("Coogle Aff.") ¶ 3.) Thereafter, the parties, through counsel, engaged in communications in an attempt to resolve the matter. (Coogle Aff. ¶ 5.) Babcock retained Jeff Garrett, a numismatic expert, located in Kentucky, to determine the number of counterfeit coins purchased by Babcock. (Babcock Aff. Ex. B ¶ 7.) Babcock also enlisted the assistance of John Albanese, a professional numismatist, who is located in Florida. (Babcock Aff. ¶ 7; Geller Aff. ¶ 28.) The discussions continued between the parties through August 31, 2011. (Coogle Aff. ¶ 5.) According to Babcock, he and his counsel made it clear to Anthony's that if the

---

[5]This "agreement" to exchange coins is the purported "accord and satisfaction" which forms the basis of count two of plaintiff's declaratory judgment action.

[6]According to plaintiff, on February 11, 2011, it received the shipment of coins from Babcock. Upon examination of the shipment, Anthony's realized that the coins were not the ones which the parties agreed were to be exchanged. Anthony's immediately stopped delivery of the replacement coins in transit to Babcock. (Geller Aff. ¶¶ 22-23.)

matter were not successfully resolved, Babcock would file suit in Kentucky. (Babcock Aff. Ex. B ¶ 9.) By contrast, plaintiff was "under the impression" that if Babcock was going to bring suit, the action would be filed in New Jersey. (Affidavit of Joel J. Reinfeld, Esq. ("Reinfeld Aff. ¶ 4.)  By letter dated August 10, 2011, plaintiff's counsel advised defendant's counsel that an "accord and satisfaction" had been reached between the parties in November 2010, at a time when the parties were not represented by counsel. (Coogle Aff. ¶ 7.)

C.      **The Instant Action and Motion**

Anthony's filed suit against Babcock on September 14, 2011, in the Superior Court of New Jersey.  The complaint seeks, among other things, a declaratory judgment that (1) a contract existed for the sale/purchase of lots of coins and that plaintiff fully performed its obligations under the contract and (2) a settlement was reached between the parties. (Docket Entry No. 1.) On October 28, 2011, defendant removed the case to the United States District Court for the District of New Jersey based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.[7]  (Id.) On November 18, 2011, Babcock filed an answer, counterclaim and third-party complaint against Guitman. (Docket Entry No. 5.)  The counterclaim and third-party complaint assert claims of, among other things, breach of contract, consumer fraud in violation of N.J.S.A. 56:8-2, *et seq.*, breach of express and implied warranty and a pattern of racketeering in violation of 18 U.S.C. §§ 1961 and

---

[7]Babcock also claims this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

<tr>
<td>

</td>
</tr>

<tr></tr>

<tr></tr>

<tr></tr>

<tr></tr>

<tr></tr>

<tr></tr>

<tr></tr>

<tr></tr>

1962.[8] (Id.) On June 6, 2012, Babcock filed an action against Anthony's and Guitman in the Western District of Kentucky.[9]

After extensive Court efforts to finally settle the case were unsuccessful, defendant re-filed his motion to transfer venue to the Western District of Kentucky pursuant to 28 U.S.C. § 1404(a), to consolidate the New Jersey and Kentucky actions, and in the alternative to dismiss the complaint. (Docket Entry No. 31.)  Defendant argues that plaintiff's forum choice should be given little weight because the complaint is really just a pretext to achieve venue in New Jersey.  Defendant maintains that plaintiff's decision to file suit in New Jersey was a "disingenuous attempt" to secure a forum that would make it difficult for Babcock to obtain compensation for his loss, and that it is a "tactical step" to further plaintiff's "fraudulent scheme." (Def. Br. at 10.) In support of this pretext argument, Defendant states that the pleading seeks "no real relief" and merely asserts an affirmative defense. (Id. at 13.) Defendant also contends that the location of the evidence and defendant's expert witness, which are located in Kentucky, weigh in favor of transfer. (Id. at 15.)

Plaintiff denies that its Complaint was a pretext for forum selection.  It also argues that the action could not have been brought in Kentucky and therefore venue in that

---

[8]Defendant also filed a motion to transfer venue on November 18, 2011. (Docket Entry No. 6) Defendant voluntarily withdrew, without prejudice, the motion to transfer upon his belief that "an agreement in principle" had been reached regarding this case. (Def.'s Br. at 7.)

[9]The complaint, captioned Christopher Babcock v. Anthony's LLC and Marc Guitman, alleges essentially the same facts and causes of action as those contained in the counterclaim and third-party complaint. (Certification of Rebekah R. Conroy, Esq. "Conroy Certif.¶ 6 and Ex. C.)

district is improper. (Pl.s Br. at 9-10.) Plaintiff further contends that the convenience of the parties and the witnesses weigh against transfer. (Id. at 12.)

## DISCUSSION

**A.     Transfer of Venue Pursuant to § 1404(a)**

Section 1404(a) confers federal courts with authority to transfer a case to another district "where it may have been brought," when doing so is "in the interest of justice" and serves "the convenience of parties and witnesses." 28 U.S.C. § 1404(a). The decision to transfer a case under § 1404(a) rests within the sound discretion of a district court. See Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973); Cadapult Graphic Sys., Inc. v. Tektronix, Inc., 98 F. Supp. 2d 560, 564 (D.N.J. 2000). The purpose of section 1404(a) "is to prevent the waste of 'time, energy and money' and to 'protect litigants, witnesses and the public against unnecessary inconvenience and expenses....'" Ricoh Co., Ltd. v. Honeywell, Inc., 817 F.Supp. 473, 479 (D.N.J. 1993) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)).

The moving party bears the burden of establishing (1) that the proposed transferee forum is one in which the case "might have been brought," and (2) that in the interest of justice, the proposed transferee forum is more convenient for the parties and witnesses. See CIBC World Mkts., Inc. v. Deutsche Bank Sec., Inc., 309 F. Supp. 2d 637, 643 (D.N.J. 2004) (citations omitted). The moving party, however, is not required to show "truly compelling circumstances for ...change...[of venue, but rather, that] all relevant

things considered, the case would be better off transferred to another district." In re United States, 273 F.3d 380, 388 (3d Cir. 2001) (citations omitted).

As a threshold matter, the reviewing court must first determine whether the action could have been brought in the transferee district. Shutte v. Armco Stell Co., 431 F.2d 22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971).  Then, the court must consider relevant private and public interest factors to determine whether the litigation would more conveniently proceed and the interests of justice would be better served by a transfer. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d. Cir. 1995) (identifying private and public interest factors).

**B.     Adequate Transferee Forum**

The venue statute limits transfer to a district or division "where [the case] may have been brought." 28 U.S.C. § 1404(a).  An action may be transferred to another district only if that district would be proper venue for the action and that forum is capable of asserting subject matter jurisdiction over the claims and in personam jurisdiction over the defendants. See Yang v. Odom, 409 F. Supp. 2d 599, 604 (D.N.J. 2006).

This case could have been brought in the Western District of Kentucky.  The court has personal jurisdiction over defendant, Babcock, because he is a resident of Kentucky.[10]

---

[10]Plaintiff argues that the Court should deny the motion to transfer on the grounds that the court in Kentucky lacks jurisdiction over third-party defendant Guitman.  The Court disagrees. A transfer is permitted if the plaintiff had a right to bring the action in the transferee district at the time of the commencement of the action.  See Shutte, 431 F. 2d at 24 ("a transfer is authorized by [§ 1404(a)] only if the plaintiff had an 'unqualified right' to bring the action in the transferee forum *at the time of the commencement of the action*") (emphasis added). Guitman was not a

Venue is proper in Kentucky where defendant Babcock resides. See 28 U.S.C. § 1391(a)(1).[11] Kentucky has subject matter jurisdiction over the claims and in personam jurisdiction over the defendant and therefore the action could have been brought there. See Yang, 409 F. Supp. 2d at 604.

C.    **Balance of Interests**

The transfer provision identifies certain criteria to be considered: convenience of parties, convenience of witnesses, and the interests of justice. 28 U.S.C. § 1404(a). The Third Circuit articulated a more comprehensive list of public and private concerns implicated by § 1404(a). Private concerns include but are not limited to: (1) plaintiff's original choice of venue; (2) defendant's forum preference; (3) where the claim arose; (4) convenience to the parties in light of their financial and physical condition; (5) availability of witnesses in each of the fora; and (6) the location of books and records. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d. Cir. 1995). Public concerns include but are not limited to: (1) the ability of each forum to enforce the judgment; (2) practical considerations that would make trial more expeditious or inexpensive; (3) court

---

party to the action at the time of its commencement and therefore, for purposes of the transfer motion, it is irrelevant whether Guitman is within the jurisdiction of the Western District of Kentucky. That is for the transferee forum to decide should the parties raise the issue by motion there. Also, since defendant named Guitman and also seeks transfer, it may be assumed that defendant has considered the possibility of a jurisdictional issue over Guitman.

   [11]An action where jurisdiction is founded on diversity may be brought in a judicial district where any defendant resides, if all reside in the same state. See 28 U.S.C. § 1391(b)(1). Babcock is the only defendant in this case. He resides in Kentucky and therefore venue is proper there.

congestion; (4) local interest in deciding the controversy; (5) public policies of each fora; and (6) familiarity with state law in diversity cases. Id. Thus, courts consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." Id.; see also Clark v. Burger King Corp., 255 F.Supp.2d 334, 337 (D.N.J. 2003). The "analysis is flexible and must be made on the unique facts of each case." Calkins v. Dollarland, Inc., 117 F. Supp.2d 421, 428 (D.N.J. 2000) (citations omitted).

    1.    **Private Interest Factors**

Generally, a plaintiff's initial choice of venue is entitled to due consideration. Shutte v. Armco Stell Co., 431 F.2d 22, 24 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971) (citation omitted.) However, the plaintiff's choice is only one factor to consider. See Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31 (1988). Courts give less weight to a plaintiff's forum preference when it chooses a forum that has little connection to the facts of a case. See Tischio v. Bontex, Inc., 16 F. Supp. 2d 511, 521 (D.N.J. 1998); Honeywell, 817 F. Supp. at 481-482; Amer. Tel. & Tel. Co. v. MCI Commc'ns Corp., 736 F. Supp. 1294, 1306 (D.N.J. 1990) (citations omitted). That is the case here.

First, Babcock is in Kentucky. He may be considered the "real" plaintiff in the case. It was Babcock who first made a valid claim for damages against Anthony's—not the other way around. Babcock, upon concluding that he did not receive the quality of merchandise he paid for, had a clear right to redress. Thus, Babcock, allegedly having

been defrauded regarding the coins sold to him by Anthony's, would be the logical claimant in an action for damages. Had Babcock filed first, he would have filed in Kentucky–precisely his objective by way of this motion to transfer.

However, plaintiff won the race to the courthouse and chose New Jersey. Babcock argues that plaintiff's filing of a declaratory judgment action in New Jersey was simply a tactic to select his favored forum. Indeed, the timing and substance of the New Jersey filing do raise some questions. Plaintiff denies forum shopping and claims it legitimately seeks a declaratory judgment regarding (1) the parties' performance under the purchase agreements and (2) specific performance of a purported settlement agreement reached by the parties. (Pl.s Br. at 16.) Babcock counters that Anthony's raced to file the complaint in New Jersey only after Babcock advised plaintiff that he intended to commence litigation if the dispute could not be resolved. (Coogle Aff.¶ A.) Without commenting on the merits, Babcock appears to be the primary aggrieved party and plaintiff was aware that commencement of litigation by Babcock was a possibility if the dispute was not settled. (Id.)

When the central facts of a lawsuit occur outside of the chosen forum, plaintiff's choice of forum is also afforded less weight. NCR Credit Corp. V. Ye Seekers Horizon, Inc., 17 F. Supp. 2d 317, 321 (D.N.J. 1998). Anthony's solicitation of sales was effected over the internet via e-Bay. Anthony's also contacted Babcock in Kentucky by telephone and email to solicit and consummate sales. (Babcock Aff. Ex. B ¶ 3.) Defendant never

came to New Jersey but the weighty merchandise purchased by Babcock was shipped to Kentucky. In fact, Babcock made 9 separate purchases of coins–and presumably Anthony's made as many shipments–to Kentucky. Thus, in addition to the electronic solicitation and telephone contacts, approximately $527,000 worth of coins were delivered to Kentucky, for defendant's use in Kentucky. This fact weighs in favor of transfer.

The convenience of the parties also weighs in favor of transfer. Courts look to the relative physical and financial condition of parties in evaluating convenience. Santi v. Nat'l Business Records Management, LLC, 722 F. Supp. 2d 602, 608 (D.N.J. 2010). Either plaintiff or defendant may be required to engage in some travel depending on where the case is heard. Plaintiff is a nationwide merchant peddling its goods around the country. Babcock is an individual with a busy medical practice involving maxillofacial surgery. To the extent Guitman is considered, he is a salaried employee of plaintiff. Presumably he will continue to be paid should the case against him proceed. Anthony's has numerous employees, and conducts its business, at least in part, over the internet. (Compl. ¶ 4; Geller Aff. ¶ 4.) It thus appears that any travel required would be more inconvenient to Babcock than to Anthony's. As a practical matter, Anthony's should expect that it may be subject to suits in the various forums in which it solicits and completes sales. By contrast, Babcock, as an individual consumer and collector of coins,

likely would not have contemplated being hauled into New Jersey to settle a claim that he believed was his in the first instance.

The factor regarding access to the sources of proof weighs slightly in favor of Kentucky. The documentary evidence in this case–correspondence, e-Bay listings, invoices, emails, etc.–are not so voluminous and neither party has suggested that the transportation of the documents would be unduly burdensome or expensive. Fasano v. Coast Cutlery Co., No. 11-3977, 2012 WL 1715233, at *5 (D.N.J. May 15, 2012). However, the coins in dispute are in Kentucky and weigh approximately 500 lbs. (Defendant's Reply Brief ("Reply Br.") at 13.)   Defendant's expert, located in Kentucky, has already examined the coins. Plaintiff's expert presumably will need to inspect the coins in Kentucky. Regardless of where the case is venued, it is likely that the expert of either plaintiff or defendant will have to travel some distance for either examination of the coins, deposition, or trial. However, the convenience of experts is not an important transfer consideration. Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp., No. 05-898, 2005 WL 1116318, at *7 (D.N.J. May 10, 2005); see also McLauglin v. GlaxoSmithKline, LLC, No. 12-3272, 2012 WL 4932016, at 4 (E.D.Pa. Oct. 17, 2012) ("[T]he convenience of expert witnesses is generally given little weight in a motion to transfer venue.") (citations omitted).

13

### 2. **Public Factors**

The public interest factors also weigh in favor of transfer. Although both states have some interest in adjudication of this matter, the primary locus of the dispute is in Kentucky. The coins were purchased by a Kentucky resident, and shipped to Kentucky, for use and enjoyment within the state. Thus, most of the operative facts occurred in Kentucky. See Delta Air Lines, Inc. v. Chimet, S.P.A., 619 F.3d 288, 300 (3d Cir. 2010) (quotations omitted) ("'In evaluating the public interest factors the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum.'").

The public factor of court congestion also weighs in favor of transfer. Official Court statistics maintained by the Administrative Office of the U.S. Courts indicate that New Jersey is a heavily trafficked district, and that New Jersey's weighted case average is heavier than Kentucky's. See Administrative Office of the United States Courts, Judicial Caseload Profile, Weighted and Unweighted Filings Per Authorized Judgeship, http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/ 2011/appendices/X1ASep11.pdf (as visited November 5, 2012).

*     *     *

14

On balance, the private and public factors would be better served by transfer. Based on consideration of the totality of the circumstances, the Court concludes that the Western District of Kentucky is the most appropriate and convenient forum for this case.

## CONCLUSION

For the reasons stated above, defendant's motion to transfer venue to the Western District of Kentucky is **granted**. (Docket Entry No. 31.)  The Clerk's Office shall take no action on transfer of this case for 14 days.  See L. Civ. R. 72.1(c)(1)(C).  A separate Order accompanies this Opinion.


      s/Mark Falk
      **MARK FALK**
      **United States Magistrate Judge**

**DATED: November 8, 2012**